**B–C CABLE COMPANY, INC.,**
**Appellant,**

v.

**CITY AND BOROUGH OF**
**JUNEAU, Appellee.**

No. 4587

Supreme Court of Alaska.

June 27, 1980.

Allan A. Engstrom, Juneau, for appellant.

Donna F. Page, Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

CONNOR, Justice.

The sole issue in this case is whether certain municipal franchises granted to a cable television company were superceded by state legislation which purportedly pre-empts the field of public utilities regulation. The three franchises in question, each of which requires payment of a 3% franchise tax, were granted to appellant, B–C Cable, between 1965 and 1967 by the City of Juneau, the City of Douglas and the Greater Juneau Borough.[1] In 1970, these three entities merged to form one home rule municipality, the City and Borough of Juneau, appellee in this case. It is undisputed that prior to the 1970 merger all three franchises were valid. Nor is it disputed that, as a result of the merger, appellee became the successor in interest to all obligations owed to and by appellant.[2]

At all times relevant to this case, B–C Cable has continued to use the public streets and rights of way granted by the franchises, but, pursuant to its contention that the franchises have been rendered invalid by superceding legislation, discontinued payment of the 3% franchise tax in mid-1975. The city then commenced suit to collect the unpaid franchise fees from mid-1975 to 1977. From summary judgment in favor of the city, B–C Cable appeals.

Before 1970, the cable television industry was not regulated by the State of Alaska. Consequently, Alaska cities and boroughs had total jurisdiction and control over the activities of the industry. In 1970, the legislature adopted as Title 42, the Alaska

1. On July 19, 1965, the City of Juneau passed ordinance No. 517 granting a twenty year franchise for cable television service to B–C Cable Company. The ordinance was accepted by B–C Cable on July 20, 1965 and approved by the voters of the municipality on August 3, 1965. A similar procedure was followed in 1966 by the Greater Juneau Borough and resulted in a twenty year franchise agreement substantially similar to the agreement with the City. On March 14, 1967, B–C Cable entered into a five year utility permit agreement. At the end of the five year period, appellant held

over and thus continued to operate under the same terms and conditions as before termination. At the time the above franchises were granted, Alaska cities and boroughs were authorized to grant such utility franchises or permits by AS 29.10.141(a) (cities) and AS 07.15.-170 (boroughs).

2. Section 16.2 of the Juneau city charter states:
"(a) The municipality shall succeed to all assets and liabilities of the local government unified."

Public Utilities Commission Act. The APUC Act expressly includes the cable television industry within its scope [3] and contains two sections directed specifically to municipal regulation of a public utility:

"Sec. 42.05.251. *Use of streets in cities and boroughs.* Public utilities have the right to permit to use public streets, alleys and other public ways of a city or borough, whether home rule or otherwise, upon payment of a reasonable permit fee and on reasonable terms and conditions and with reasonable exceptions the city or borough requires. A dispute as to whether fees, terms, conditions or exceptions are reasonable shall be decided by the commission. The commission may require a utility to add the amount of any permit fee paid as a pro rata surcharge to its bills for service rendered at locations within the boundaries of any city or borough which requires payment of a permit fee.

Sec. 42.05.641. *Regulations by municipality.* The commission's jurisdiction and authority extend to public utilities operating within a city or borough, whether home rule or otherwise. In the event of a conflict between a certificate, order, decision or regulation of the commission and a charter, permit, franchise, ordinance, rule or regulation of such a local governmental entity, the certificate, order, decision or regulation of the commission shall prevail."

Appellant maintains that the APUC Act is complete and comprehensive in its regulation of public utilities and leaves nothing for a city to regulate except its public streets. Accordingly, appellant argues that the passage of the APUC Act had the effect of voiding all existing municipal franchises to public utilities regulated under the Act. Further, argues appellant, until the city establishes a reasonable permit fee for the use of its public streets, as it may do pursuant to AS 42.05.251, appellant is not liable for any tax.[4] We do not agree.

While the APUC Act pre-empts a large portion of the regulatory authority of municipalities over utility companies, it does not pre-empt all such authority. For example, AS 42.05.641, quoted above, states that "in the event of a conflict between a certificate, order, decision or regulation of the commission" and, *inter alia*, a municipal "franchise," the former shall prevail. Had the legislature intended to void all municipal franchises by passage of the APUC Act, there would have been no need to provide for the supremacy of the Act over a conflicting municipal franchise provision. Moreover, inasmuch as AS 42.05.641 recognizes existing franchises, we think it unreasonable to presume that the legislature intended, by AS 42.05.251, that communities throughout the state issue new permits to utilities within their boundaries when existing franchises already adequately cover the subject. As we read AS 42.05.251 and AS 42.05.641, provisions of a municipal franchise not in actual conflict with APUC regulatory activity remain in force.

Appellant maintains, however, that state preemption of the municipal franchises was confirmed by the legislature with the adoption of the new Municipal Code in 1972. Appellant specifically directs our attention to AS 29.13.100 entitled "Limitation on home rule powers":

"[The following provisions] supercede existing and prohibit future home rule enactments which provide otherwise:

. . . . .

(17) AS 29.48.040–29.48.100 (Utilities)"

AS 29.48.050(1), adopted in 1970 as an amendment to the APUC Act, provides:

"*Franchises and permits.* (a) The assembly, acting for areas outside [the] cities and the council acting for the area within a city may grant franchises, including

---

3. AS 42.05.701(2), (8).

4. Appellant argues that the 3% fee may not be carried forward so as to constitute the "reasonable fee" contemplated by AS 42.05.251. That fee was originally designed to compensate the city for the use of municipal streets and for the cost of municipal supervision and regulation. Since the latter services have now been assumed by the APUC, appellant argues that the reasonableness of the fee is subject to doubt.

exclusive franchise privileges, for the construction, operation or maintenance of bus transportation systems and public utilities not regulated under AS 42.05 and may permit them the use of streets and other public places under regulations prescribed by ordinance."

Appellant argues that, taken together, AS 29.13.100 and AS 29.48.050(1) void existing municipal franchises to public utilities regulated under AS 42.05. Again, we are unpersuaded.

 First, AS 29.13.100 applies only to home rule *enactments*. It is generally recognized that, regardless of the method by which a franchise comes into being, once it is granted it is a contract binding upon both parties. *City of Owensboro v. Top Vision Cable Co. of Kentucky*, 487 S.W.2d 283, 287 (Ky. 1972), *cert. denied*, 411 U.S. 948, 93 S.Ct. 1926, 36 L.Ed.2d 410 (1973); *City of Summerville v. Georgia Power Co.*, 205 Ga. 83, 55 S.E.2d 540, 542 (1949); *City of Baker v. Montana Petroleum Corp.*, 99 Mont. 465, 44 P.2d 735, 737 (1935); 3 C. Antieau, Municipal Corporation Law § 29.08 (1979). Thus, although all three of the franchise agreements before us originated in the form of municipal ordinances,[5] they are in fact contracts. As such, the franchises were not "enactments" within the meaning of AS 29.13.100 and are thus unaffected by that statute.

Second, in our opinion, the state's general saving clause, AS 01.10.100,[6] precludes a finding that the municipal franchises in question have been superceded. In *Alaska Public Utilities Commission v. Chugach Electric Association*, 580 P.2d 687, 692 (Alaska 1978), (*quoting Territory of Alaska v. American Can Co.*, 137 F.Supp. 181, 183 (D.C.Alaska 1956)), we said:

"It is a fundamental rule of statutory construction that a general saving clause or statute preserves rights and liabilities which have accrued under the act repealed and that they operate to make applicable in designated situations the law as it existed before the repeal, *unless such application is negatived by the express terms or clear implication of a particular repealing act*, or where not otherwise provided by the repealing act." [emphasis in original].

 In the present case, the rights and liabilities of the parties respecting the use of public streets and rights of way were determined under the municipal franchise agreements. Since neither the Municipal Code (Title 29), nor the APUC Act (Title 42), either expressly or by clear implication nullify the rights and liabilities of the parties under the franchise agreements, we conclude that the saving statute operates to keep these agreements in force.

On the basis of the foregoing analysis, we hold that the franchises in question were not rendered void by subsequent legislation. We express no opinion, however, on the reasonableness of the 3% franchise tax. That question is within the original jurisdiction of the Alaska Public Utilities Commission. AS 42.05.251. If, after this appeal, appellant still wishes to challenge the reasonableness of the tax, it may do so by bringing an appropriate proceeding before the APUC.

The judgment is AFFIRMED.

---

**5.** See note 1, *supra*. As to the third agreement, it is generally held that a utility permit granting a public service company the right to use the public streets is a franchise. *Griffin v. Oklahoma Natural Gas Corp.*, 37 F.2d 545, 548 (10th Cir. 1930); *Kornegay v. City of Raleigh*, 296 N.C. 155, 152 S.E.2d 186 (1967). If that franchise expires but the utility continues to use the public streets and rights of way to maintain its facilities, an implied contract arises under the same terms and conditions as the expired grant. *Village of Lapwai v. Alligier*, 69 Idaho 397, 207 P.2d 1025, 1027 (1949).

**6.** AS 01.10.100 provides:

"*Effect of repeals or amendments.* (a) The repeal or amendment of any law does not release or extinguish any penalty, forfeiture, or liability incurred or right accruing or accrued under such law, unless the repealing or amending act so provides expressly. The law shall be treated as remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of the right, penalty, forfeiture, or liability."