■ In the Matter of CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Appellant, v CITY OF NEW YORK et al., Respondents. In the Matter of CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Respondent, v CITY OF NEW YORK et al., Appellants. — Judgment denominated an order of Supreme Court, New York County (Maresca, J.), entered July 30, 1981, denying an application to compel respondents to accept certain credits against petitioner's special franchise taxes and dismissing the petition, unanimously affirmed, without costs. Judgment of Supreme Court, New York County (Whitman, J.), entered October 26, 1981, granting application to credit certain other franchise fee payments against petitioner's special franchise taxes, unanimously reversed, without costs, the petition denied and this proceeding dismissed. Petitioner sought to have franchise fee payments, made to the City of New York for use of property pursuant to section 626 of the Real Property Tax Law, set off against its special franchise tax obligation. Under an agreement which expired October 31, 1980, the provisions of section 626 were waived. In pertinent part, this consent agreement, adopted and approved in 1972 to be retroactively effective from November 1, 1970, provided that all such payments pursuant to this agreement would be considered in addition to, and not a part of, any taxes owed under any law or local ordinance. Special Term upheld the validity of this

waiver of section 626 in its order of July 30, 1981. Such an agreement is enforceable and is not a violation of public policy (*Teleprompter Corp. v City of New York,* 82 AD2d 145, app withdrawn 56 NY2d 808; see *Matter of Brooklyn Union Gas Co. v City of New York,* 56 NY2d 881). Denial of petitioner's application to compel respondents to credit these payments during the life of the agreement against petitioner's special franchise tax liability was thus proper. The agreement further provided that compensation to the city in the form of franchise fees would be paid as fixed in the agreement, "up to the revocation or termination by limitation of this consent, *and thereafter as hereinafter provided*" (emphasis added). Should petitioner continue to utilize the equipment and facilities beyond the expiration date of the agreement, it was explicitly agreed that compensation would continue at the same rates set during the life of the agreement, together with all tax obligations. On November 10, 1980, after expiration of the agreement, petitioner paid an additional franchise fee of $12,324,021.48. In its order of October 26, 1981, Special Term granted petitioner's application for a setoff of this payment against its special franchise tax liability, ruling that the clause pertaining to waiver of section 626 of the Real Property Tax Law did not survive the consent agreement. The rationale behind this decision was that the parties could not come to terms on a new agreement. Specifically, Special Term ruled that petitioner's continuing franchise fee payments after expiration of the agreement were being made not pursuant to the terms of that agreement, but rather pursuant to interim arrangements. Further, one of the stumbling blocks in negotiating a new agreement was petitioner's refusal to include a section 626 waiver clause therein. Petitioner points out that the interim arrangements by which franchise fees are currently being paid make no reference to any such waiver. We interpret the agreement which expired on October 31, 1980 as extending the entire compensation clause, including the section 626 waiver provision, beyond the life of the agreement, as long as the parties continue their contractual relationship in the absence of a new formal agreement. Such is implicit under the circumstances (see *B-C Cable Co. v City & Borough of Juneau,* 613 P2d 616 [Alaska]). Petitioner's objection to the inclusion of a waiver provision in any new agreement cannot unilaterally alter the clear import of the continuation language in the prior agreement. As a practical matter, it is unreasonable to assume that respondents would have consented to such an alteration of terms upon expiration, whereby utilization of property would continue to be provided albeit without compensation. The fact that a different rate of payment is being made during this interim period of negotiation does not expunge other unrelated continuation provisions in the agreement. If anything, the existence of continuation language in the agreement calls for maintaining the *status quo* until a new agreement can be reached. Concur — Ross, J. P., Carro, Asch, Bloom and Fein, JJ.