**HOMER ELECTRIC ASSOCIATION, INC., Appellant,**

v.

**CITY OF KENAI, State of Alaska Public Utilities Commission, and Matanuska Telephone Association, Inc., and Chugach Electric Association, and Fairbanks North Star Borough (amici curiae), Appellees.**

No. S–3508.

Supreme Court of Alaska.

Aug. 16, 1991.

Blaine D. Gilman, C.R. Baldwin, Law Offices of C.R. Baldwin, Kenai, for appellant.

Andrew E. Hoge, Lisa A. Murkowski, Hoge & Lekisch, Anchorage, for Matanuska Telephone.

Cary R. Graves, Timothy J. Rogers, City Atty., Kenai, for City of Kenai.

Donald W. Edwards, Gen. Counsel, for amicus curiae Chugach Elec.

Mark Andrews, Asst. Borough Atty., Eugene Hardy, Borough Atty., Fairbanks, for amicus curiae Fairbanks North Star Borough.

No appearance by APUC.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

In this case, the Alaska Public Utilities Commission (APUC) decided a dispute over who should bear the costs of relocating a utility's equipment in a municipal right of way when the municipality's own improvement project made the relocation necessary. On administrative appeal, the superior court found that the APUC had acted beyond its jurisdiction. We disagree. Accordingly, we reverse the superior court's decision on the jurisdictional issue and remand for appellate review of the underlying APUC decision.

### I

In 1971, the City of Kenai (City) and Homer Electric Association, Inc. (HEA) formally agreed that HEA would purchase,[1] operate and manage the City's electric utility system. The agreement between them provided that the City would

> grant to HEA to such extent as may be required by law a permit to operate the System within the City's streets, alleys and rights-of-way, which permit shall be for a period of thirty (30) years from and after the effective date of this agreement.

On August 3, 1971, in a special election, City voters approved an ordinance that allowed the City to enter into the agreement with HEA. The ordinance explained that the City and HEA

> have reached a basic understanding concerning the terms and conditions relative to the transfer of the operation and management of the electric system to HEA and the conveyance of the City's electrical system to HEA and the City

Council desires to have the voters approve their entry into such Agreement within the guidelines set forth herein.

In describing the rights HEA would receive under the agreement, the ordinance used the terms "franchise" and "franchise or permit" interchangeably.[2] The ordinance also included the following provision:

> In [the] event that at any time during the period of this franchise the City shall lawfully elect to alter, or change the grade of, any street, alley or other public way, HEA, upon reasonable notice by the City, shall remove, relay, and relocate its poles, wires, cables and other electrical fixtures at its own expense.

The dispute at the heart of this case arose after HEA had assumed operation of the City's electrical system, when municipal construction projects in the City required relocation of some of the city light facilities. HEA relocated the facilities and demanded that the City reimburse it for the expense. The City refused. HEA then petitioned the APUC for a declaratory ruling that the City had breached its contract with HEA. The APUC dismissed HEA's petition and suggested that HEA seek approval of a rate surcharge of City residents to pay for the contested relocation expenses. In 1983, HEA filed with the APUC a special tariff to obtain a rate surcharge.[3]

The APUC consolidated HEA's tariff request with a request by Matanuska Telephone Association, Inc. (MTA) for a declaratory ruling on the availability of rate surcharges as a means of recouping relocation expenses. The City declined to participate as a full party intervenor in the public hearing that the APUC subsequently held

---

1. Under the terms of the agreement, HEA was to pay the municipal bond debt outstanding on the City's electrical system and eventually to assume ownership of the system.

2. After enactment of the APUC Act of 1970, municipalities no longer had the power to grant franchises to utilities such as HEA. *See generally B–C Cable Co. v. City & Borough of Juneau,* 613 P.2d 616 (Alaska 1980). Rather, such utilities received certificates of public convenience and necessity from the APUC and mandatory

permits from municipalities. AS 42.05.221 and 42.05.251. The City's misuse of the term "franchise" in its ordinance presumably was a slip due to force of habit and not the product of a misunderstanding of the recent changes in the law.

3. HEA also filed in the superior court a complaint for breach of contract. The superior court proceedings have been suspended pending disposition of this appeal.

in November 1983.[4] Both HEA and MTA, however, filed memoranda in support of their surcharge requests and participated at the hearing. Of MTA's three arguments in support of a surcharge, the only one relevant to the larger legal issues in the case relied on article I, section 18 of the Alaska Constitution, which prohibits government taking or damaging of private property without just compensation.[5] HEA's main argument challenged the validity of the traditional common-law rule that, absent a statute or specific agreement to the contrary, a public utility accepts the right to use public rights of way subject to an implied obligation to relocate its facilities when necessary to make way for public improvements.[6]

In its decision[7] the APUC first found that it possessed jurisdiction to review for reasonableness the traditional common-law rule on relocation expenses. The APUC next exhaustively considered the constitutional law and the public policy dictates applicable to a determination of the reasonableness of the common-law rule. Finally, the APUC held that the common-law rule was not reasonable.[8]

The City appealed the APUC order to the superior court, which dismissed the case on the ground that, as a nonparty to the APUC hearing, the City had no standing to seek review. *City of Kenai v. State, APUC,* 736 P.2d 760, 762 (Alaska 1987).

The City appealed the superior court decision to this court; we vacated the dismissal and remanded the case for review. *Id.* at 763. Upon remand, HEA and MTA joined the APUC in the appeal by intervening. After review, the superior court, Judge Roy H. Madsen, found in favor of the City, holding that the APUC did not have subject matter jurisdiction to enter its order. The superior court thus vacated the order. The superior court also awarded attorney's fees of $8,500, but did not apportion the award among the APUC, MTA and HEA. The APUC has not appealed the superior court judgment. HEA has appealed both the jurisdictional decision and the attorney's fees decision. MTA also has filed briefs.[9]

## II

When the question on appeal is one of law and no practical administrative expertise is involved, the proper standard of review is the "substitution of judgment test." *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 903 (Alaska 1987); *Glacier State Tel. Co. v. State, APUC,* 724 P.2d 1187, 1189 n. 1 (Alaska 1986). The questions here of APUC adjudicatory jurisdiction invoke the special competency of the courts, and not the expertise of the APUC.[10] *See Tesoro,* 746 P.2d at 903–04. As a result, we review the controlling legal issues with no defer-

---

**4.** *See City of Kenai v. State, APUC,* 736 P.2d 760, 761 (Alaska 1987).

**5.** MTA also presented arguments that turned upon the unique circumstances of its contract with the City of Wasilla. The APUC decision in this case did not resolve issues MTA raised in those arguments.

**6.** *See generally* 12 E. McQuillin, *The Law of Municipal Corporations* § 34.74a, at 226 (3d ed. 1986); O. Reynolds, *Handbook of Local Government Law* § 111, at 341 (1982).

**7.** APUC Order No. U–83–74(7)/U–83–27(4).

**8.** Although the APUC agreed with the arguments that both HEA and MTA had asserted, the APUC nevertheless denied approval of the surcharge relief that the utilities requested. Instead, MTA received declaratory relief significantly different than the ruling it had sought, and HEA received an order for reimbursement of reloca-

tion expenses that it might enforce through further court action. The APUC stated that if its decision on unreasonableness were overturned on appeal, the APUC then would reconsider the appropriateness of surcharges.

**9.** MTA is technically an appellee here, but MTA's position is actually consistent with appellant HEA's. Two amici curiae also have filed briefs: Fairbanks North Star Borough and Chugach Electric Association.

**10.** We will review with some deference an agency's construction of a statute "where the questions at issue implicate special agency expertise or the determination of fundamental policies within the scope of the agency's statutory function." *Tesoro,* 746 P.2d at 903. In such cases, we apply a rational basis standard. *Id.* Where the statute to be construed, however, is, as in this case, the very statute that defines the scope of the agency's function, the court properly makes its own interpretation.

ence to the APUC decision. Because the superior court acted below as an intermediate appellate court, we also offer no deference to its decision; rather, we review the case *de novo.* *Id.* at 903.

### A

As noted, the common law traditionally required a utility to bear the cost of relocating its facilities in a public right of way whenever state or local authorities request such relocation. *See City & County of Denver v. Mountain States Tel. & Tel.,* 754 P.2d 1172, 1173 n. 1 (Colo.1988); *General Tel. Co. of the Northwest, Inc. v. City of Bothell,* 105 Wash.2d 579, 716 P.2d 879, 882 (1986); *see generally* 12 E. McQuillin, *The Law of Municipal Corporations* § 34.74a, at 226 (3d ed. 1986); O. Reynolds, *Handbook of Local Government Law* § 111, at 341 (1982). This rule is still in force in many jurisdictions. *See, e.g., Mountain States Tel. & Tel.,* 754 P.2d at 1176. The parties and the amici curiae in this case dispute whether the APUC Act and the Alaska Constitution permit application of the common-law rule. Because of the posture of this case, we decline to reach that question today.

In our view, this case presents only an issue of APUC adjudicatory jurisdiction. The specific jurisdictional statute at issue is AS 42.05.251, which provided in pertinent part:

*Use of streets in cities and boroughs.* Public utilities have the right to a permit to use public streets, alleys, and other public ways of a city or borough, whether homerule or otherwise, upon payment of a reasonable permit fee and on reasonable terms and conditions and with reasonable exceptions the municipality requires. A dispute as to whether fees, terms, conditions, or exceptions are reasonable shall be decided by the commission.[11]

The APUC found that AS 42.05.251 granted it jurisdiction to decide whether the City reasonably could impose, under color of the common-law rule, relocation expenses on HEA.[12] The APUC described this jurisdiction as "the uniquely broad responsibility conferred by the Legislature upon the Commission in AS 42.05.251 to regulate the interface between municipalities and public utilities."

The superior court sharply disagreed with the APUC. In its Memorandum Opinion and Judgment, the superior court summed up its legal conclusions:

1. The APUC is not vested with a broad grant of jurisdiction to resolve all disputes between municipalities and utilities;

2. Any common law liability for relocation expenses that may exist is not the statutory equivalent of a "permit fee" under AS 42.05.251;

3. There is no necessarily implied authority to review the common law for reasonableness granted under AS 42.05.-251.

Therefore, the court holds the APUC exceeded its statutory jurisdiction under AS 42.05.251 when it reviewed for reasonableness the City's position of reliance on the common law of relocation expense allocation.

---

11. Enacted by ch. 113, § 6, SLA 1970; amended by ch. 104, § 1, SLA 1986. The 1986 amendments replaced "city and borough" with "municipality," removed reference to "home rule," and added a sentence to limit the amount that a municipality may charge as a use "fee." The 1986 amendments did not alter the language of the statute relevant to this case.

12. In its order the APUC stated in part:

However, as the Commission construes AS 42.05.251, the imposition of a surcharge requires a preliminary finding that the expense imposed by a municipality and to be recovered through the surcharge is the conse-

quence of a reasonable fee, term, or condition. If the fee, term, or condition causing the expenses is not reasonable under AS 42.-05.251, then the proper response is to prohibit or appropriately modify the subject municipal action.

In the concluding portion of its order the APUC stated:

3. The practice of municipalities directing unreimbursed relocations of utility facilities laid in municipal rights-of-way is declared unreasonable within the contemplation of AS 42.05.251, except for those situations discussed in the body of this Order.

Because the superior court found the jurisdictional question dispositive, it did not review the substance of the APUC order. We also do not review the order's substance. We only consider whether the APUC had jurisdiction under the Alaska Public Utilities Commission Act to issue the order.

## B

■ The legislature established the "[g]eneral powers and duties" of the APUC in AS 42.05.141, which provides in subsection (a)(1), that the APUC shall

regulate every public utility engaged or proposing to engage in such a business inside the state, except to the extent exempted by AS 42.05.711,[13] and the powers of the commission shall be liberally construed to accomplish its stated purposes.

This provision presents two guiding principles for determining the extent of the APUC's jurisdiction under specific provisions of the Act. On the one hand, it includes a principle of limitation, restricting the APUC's power to the specific jurisdictional areas of its "stated purposes." *Id.* On the other hand, it includes a principle of expansion, mandating that the APUC's power to act within its specific areas of jurisdiction "is to be liberally construed." *Id.* Our prior decisions demonstrate the way in which these two principles shape the adjudicatory jurisdiction of the APUC.

For example, in *B–C Cable Co. v. City & Borough of Juneau,* 613 P.2d 616 (Alaska 1980), we found that a challenge to a 3% franchise tax imposed by the municipality upon a utility clearly fell within the APUC's specific, stated purpose under AS 42.05.251, to determine the reasonableness of use permit fees. *Id.* at 619. Because the APUC Act mandates liberal construc-

tion of APUC jurisdiction, our inquiry in the case went no further. We explicitly declined to consider the reasonableness of the tax and directed the appellant in the case to bring an appropriate proceeding before the APUC if it wished to contest the tax. *Id.*

By contrast, in *Greater Anchorage Area Borough v. City of Anchorage,* 504 P.2d 1027 (Alaska 1972), *overruled on other grounds, City and Borough of Juneau v. Thibodeau,* 595 P.2d 626, 629 (Alaska 1979), we found that a dispute between two municipalities did *not* clearly fall within the stated purpose of APUC jurisdiction to resolve disputes among competing utilities under AS 42.05.221.[14] *Id.* at 1033–34. Our opinion in the case relied substantially upon an interpretation of the overall design of the APUC Act, which, we found, very selectively empowers the APUC. We wrote:

The essence of the administrative power conferred upon the [A]PUC is regulatory; the Commission is empowered to set rates, promulgate regulations, collect information, process complaints against utilities and the like. The statutory framework, however, does not grant unlimited adjudicatory authority to the [A]PUC. The agency is not empowered to decide disputes between municipalities over the control of construction activities within rights of way belonging to one of the disputants.

*Id.* at 1033. The construction activity precipitating the dispute in *Greater Anchorage* was installation of utility equipment. That meager nexus with APUC concerns, however, was not sufficient to form a basis for agency jurisdiction under the Act. *See id.* at 1033–34.

In *Greater Anchorage,* then, we narrowly construed the stated purpose of a stat-

---

**13.** AS 42.05.711 exempts a few particular types of utility providers from the APUC Act.

**14.** AS 42.05.221 requires a public utility to obtain a certificate of public convenience from the APUC. One subsection vests the APUC with dispute resolution authority over a particular type of dispute:

(d) In an area where the commission determines that two or more public utilities are

competing to furnish identical utility service and that this competition is not in the public interest, the commission shall take appropriate action to eliminate the competition and any undesirable duplication of facilities. This appropriate action may include, but is not limited to, ordering the competing utilities to enter into a contract....

AS 42.05.221.

ute granting the APUC adjudicatory power and found the dispute at issue outside the scope of the agency's jurisdiction. In *B–C Cable*, having no doubt that the tax issue fell within the narrow scope of APUC jurisdiction to review a particular type of dispute, we liberally construed the agency's power within that scope and refused to interfere. In sum, we have construed AS 42.05.141(a)(1) to mean that the actual areas in which the APUC may exercise its adjudicatory authority are quite narrow. Within those narrow areas, however, the APUC's powers to adjudicate are plenary, as broad as the specific provisions of the Act permit.

As noted, this case concerns a very specific APUC adjudicatory power: the agency's power to decide any dispute between a municipality and a public utility as to the reasonableness of "fees, terms, conditions, or exceptions" imposed on the utility's permit to use the municipal rights of way. AS 42.05.251. We believe that the dispute between the City and HEA clearly falls within the APUC's jurisdiction under this statute.

The City, not surprisingly, argues against such a finding of original APUC jurisdiction over its dispute with HEA. The City's arguments, however, are unpersuasive.

To begin with, the City argues that HEA has no permit in the traditional sense, and thus the dispute between them does not implicate AS 42.05.251. On the contrary, a permit is simply a "license or grant of authority to do a thing." *Black's Law Dictionary* 1140 (6th ed. 1990). The APUC Act *requires* the City to grant HEA authority to use the rights of way. AS 42.-05.251. The terms of the written agreement between HEA and the City expressly include such a permit for HEA to use the City's streets, alleys, and rights of way to operate the utility system. Even the ordinance submitted to the City's voters ex-

plained that the City was granting HEA a permit. Obviously, HEA has a permit within the meaning of AS 42.05.251.

Next, contends the City, the requirement that HEA relocate its facilities within the City rights of way at its own expense cannot be construed as a permit "fee," within the meaning of AS 42.05.251. We find this argument irrelevant, because we believe that the City's requirement that HEA pay its own relocation expenses plainly constitutes a term or condition of HEA's permit, thus bringing it within the purview of AS 42.05.251.[15] Even if the City were correct that its imposition of the requirement is nothing more than invocation of the common-law rule, we believe that the City's decision to apply the common-law rule to HEA's permit makes the rule a term or condition of that permit. Whether or not that rule is a *reasonable* term or condition is an open question, squarely within the jurisdiction of the APUC to determine under AS 42.05.251. *Cf. B–C Cable*, 613 P.2d at 619.

We hold that the APUC has jurisdiction pursuant to AS 42.05.251 to adjudicate a dispute over the reasonableness of fees, terms and conditions imposed by a municipality on the use of its rights-of-ways by a utility. We thus reverse the superior court's jurisdictional ruling and remand this case to the superior court for a review of the substance of the APUC order.

### III

The superior court awarded partial attorney's fees in the amount of $8,500 to the City, pursuant to Appellate Rule 508(e) (permitting discretionary awards of fees by an appellate court). Our decision today removes the foundation upon which the superior court necessarily based its discretionary award of partial attorney's fees. We thus vacate the fee award.

---

**15.** In § 9, ¶ 3 of the ordinance that City voters approved prior to the grant of the permit to HEA, the City itself expressly described the relocation requirement as a term or condition:

In [the] event that at any time during the period of this franchise the City shall lawfully

elect to alter, or change the grade of, any street, alley or other public way, HEA, upon reasonable notice by the City, shall remove, relay, and relocate its poles, wires, cables and other electrical fixtures at its own expense.

The decision of the superior court is RE-VERSED in part and VACATED in part, and the case is REMANDED for proceedings consistent with this opinion.