887 So.2d 1237 (2004)
FLORIDA POWER CORPORATION, Petitioner,
v.
CITY OF WINTER PARK, Respondent.
No. SC02-2272.
Supreme Court of Florida.
October 28, 2004.
*1238 Sylvia H. Walbolt, Joseph H. Lang, Jr., and Hunter W. Carroll, St. Petersburg, FL, and Gary L. Sasso, Tampa, FL, of Carlton Fields, P.A., and R. Alexander Glenn, Associate General Counsel of Progress Energy Service Company, LLC, St. Petersburg, Florida, for Petitioner.
Thomas A. Cloud, Tracy A. Marshall, and George N. Meros, Jr., of Gray, Harris and Robinson, P.A., Orlando, FL, for Respondent.
Gordon H. Harris, Orlando, for Respondent.
Kenneth R. Hart and J. Jeffry Wahlen of Ausley and McMullen, Tallahassee, FL, on behalf of Tampa Electric Company; William B. Willingham and Michelle Hershel, Tallahassee, FL, on behalf of Florida Electric Cooperatives Association, Inc.; Ron A. Adams of Steel Hector and Davis, LLP and Jean G. Howard, Office of General Counsel, Miami, FL, on behalf of Florida Power and Light Company; and Harry Morrison, Jr., and Rebecca A. O'Hara, Tallahassee, FL, on behalf of Florida League of Cities, Inc., as Amici Curiae.
LEWIS, J.
We have for review the decision in Florida Power Corp. v. City of Winter Park, 827 So.2d 322 (Fla. 5th DCA 2002), which certified conflict with the decision in Florida Power Corp. v. Town of Belleair, 830 So.2d 852 (Fla. 2d DCA 2002), review granted, 852 So.2d 862 (Fla.2003). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons stated below, we approve the Fifth District Court of Appeal's decision in Winter Park, and disapprove the decision in Belleair to the extent described herein.
The instant action arises from the Fifth District's affirmance of the trial court's decision requiring Florida Power Corporation (FPC) to continue paying a franchise fee that had been due under a now-expired franchise agreement.[1]See Winter Park, 827 So.2d at 323. FPC's electrical system was originally built by the City of Winter Park, (hereinafter City) and sold to FPC's predecessor along with the franchise to serve as the sole provider of electricity in the area. The original franchise agreement, and each subsequent iteration thereof, contained a buy-back provision, granting the City the right to purchase the electrical system at the end of the franchise term. Each franchise agreement also contained a franchise fee. The franchise agreement underlying the instant action assessed a fee of six percent of gross receipts based on the sale of electricity *1239 within the territorial limits of the City.[2]
When the most recent franchise agreement expired by its terms, the parties' negotiations reached an impasse. FPC retained possession of the City's rights-of-way, and continued to operate as the sole provider of electricity, but refused to remit the franchise fee. The City filed an action for declaratory judgment, seeking to have the trial court confirm its right to continue receiving the franchise fee for as long as FPC occupies and utilizes the public rights-of-way. After a non-jury trial, the circuit court determined that the City indeed had the right to charge a franchise fee reasonably related to the costs of regulating and maintaining FPC's use of the public rights-of-way, and the value of that use to FPC. The trial court further determined that the six percent fee bore a reasonable relation to such expenses and value. The trial court likened FPC to a holdover tenant in the public-rights-of-way, and determined that the company would be subject to the six percent fee until the parties execute the buy-back provision or reach a new agreement.
The district court affirmed the trial court's determination. The district court adopted the trial court's analogy to principles of landlord/tenant law, and endorsed the notion that FPC was a holdover tenant subject to the terms of the original "rental" agreement. The Fifth District also noted the inequity and public harm that would result from relieving FPC of its obligation to pay the franchise fee while the City's responsibilities in regulating and maintaining the rights-of-way would continue unabated. In rendering this decision, the district court certified a conflict with the decision reached by the Second District Court of Appeal in Florida Power Corp. v. Town of Belleair, 830 So.2d 852 (Fla. 2d DCA 2002). There, upon review of a substantially similar set of facts, the district court determined that the trial court erred in granting a temporary injunction requiring FPC to continue to pay the six percent fee after expiration of the franchise agreement. See id. at 854.
Throughout the proceedings below and before this Court, FPC has maintained that continued assessment of the six percent fee amounts to unconstitutional taxation under this Court's decision in Alachua County v. State, 737 So.2d 1065 (Fla.1999). According to FPC, expiration of the franchise agreement and the concomitant termination of its franchise right to operate as the city's sole electric service provider have eliminated the bargained-for exchange that previously supported the franchise fee. Now, FPC would have this Court believe that requiring FPC to pay the six percent fee constitutes the unilateral imposition of an impermissible tax, and is prohibited by our decision in Alachua.
The reality, however, is that Alachua does not support FPC's position. FPC misinterprets judicial precedent because it divorces the principles of law established in Alachua from the underlying facts as it attempts to invoke the decision to serve its own ends. The trial court deflated FPC's argument by distinguishing the instant matter from Alachua. The district court echoed that refrain. We now add our voice to the chorus.
The distinctions between the instant matter and the scenario in Alachua are as clear as they are numerous. In Alachua, this Court reviewed a trial court order declaring a proposed bond issue invalid. *1240 See Alachua, 737 So.2d at 1066. A central issue in the bond validation proceeding was whether a privilege fee imposed by Alachua County on electric utilities using the public rights-of-way constituted an illegal tax. See id. at 1067. The ordinance at issue imposed a fee of three percent of the gross revenues generated by electric utilities within the county, and permitted the utilities to pass the expense through to their customers. See id. at 1066. To avoid having the fee declared an unconstitutional tax, the county argued that the fee was justifiable as a reasonable rental fee, user fee, or franchise fee. See Alachua, 737 So.2d at 1067.
This Court disagreed, determining that there was no nexus between the privilege fee and the reasonable rental value of the land occupied by the utilities or the county's expenses in regulating its rights-of-way. See Alachua, 737 So.2d at 1065. In rejecting the county's franchise fee argument, we noted that the fee was not bargained for, but unilaterally imposed, and did not require Alachua County to relinquish a property right or bestow anything upon the utilities in exchange for the fee. See id. at 1068. We also recognized that the privilege fee was imposed on utilities that were already occupying the rights-of-way and providing services, see Alachua, 737 So.2d at 1068, and that the stated purpose of the fee was to relieve what had been perceived as a disproportional ad valorem tax burden on taxable property owners. See id. at 1066. For these reasons, we determined that the privilege fee imposed by Alachua County was in actuality an unconstitutional tax. See id. at 1069.
While it is true that the instant matter also involves the assessment of a percent-of-revenue fee against an electric utility, that is where the similarities between this action and Alachua end. Importantly, the fee at issue here is not a novel attempt by a local government to exact revenue from a right-of-way user, but arose from a decades-old electric utility franchise granted by Winter Park to FPC. The franchise gave FPC the "right, privilege and franchise to construct, operate and maintain in the said City of Winter Park, all electric power facilities" for the purpose of supplying electricity to the City's inhabitants. Thus, during its effective period, the franchise agreement constituted a permissible bargained-for exchange pursuant to which FPC ceded six percent of revenues in exchange for access to the City's rights-of-way, the monopoly electricity franchise, and the City's corresponding relinquishment of its power to provide electric service in the community. See City of Plant City v. Mayo, 337 So.2d 966, 973 (Fla.1976).
We flatly reject the implication, propounded by FPC, that when the clock struck midnight on the final day of the franchise agreement, the six percent fee was transformed from a proper franchise fee into an unconstitutional tax. To the contrary, we endorse the district court's view that
if a franchisee and a governing body agree to a reasonable fee for access to the city's residents and the use of the public property to provide services during the term of the franchise then such a fee has not been `unilaterally imposed' and will be enforced during a holdover period in which renegotiation occurs.
Winter Park, 827 So.2d at 324. Our decision in Alachua does not permit a utility subject to a maturing franchise agreement to wait out the contract term so that it may withhold fees upon its expiration. Such an interpretation would gravely impact the renegotiation process by vitiating any motive the utility would have for entering into contractual arrangements beyond the initial franchise agreement.
*1241 Moreover, we reiterate that Alachua validates fees that are reasonably related to the government's cost of regulation or the rental value of the occupied land, as well as those that are the result of a bargained-for exchange. See Alachua, 737 So.2d at 1067. In the instant case, the trial court specifically found that the City had "offer[ed] sufficient evidence that the six percent fee was reasonably related" to the costs of regulation, and had "also presented strong evidence that the six percent fee is a fair `market rate' for such use, occupation, or rental."[3] FPC attacks these findings, arguing that the data provided at trial was not directly tied to FPC's occupation and use of the rights-of-way. The trial court recognized this point, but determined that the City had established the required nexus between expenses and fees. The petitioner provides no basis upon which this Court should divert from the usual deference accorded such findings of fact.
Neither are we persuaded by FPC's assertion, seemingly subscribed to by the Second District in Belleair, that the courts cannot extend the terms of otherwise expired franchise agreements. See Belleair, 830 So.2d at 854. As a threshold matter, the decision reached today does not force either party to perform under the terms of the expired agreement. To the contrary, each has maintained performance from the onset of the instant action. The City has maintained the rights-of-way, and has kept them safe and presentable for the public, and will continue to do so, regardless of whether FPC pays the franchise fee. Likewise, FPC has continued to accept and enjoy the benefits of access to the City's rights-of-way, and its status as the area's sole electricity provider.
Under this scenario, it is perfectly proper to imply a contract at law. See Incorporated Town of Pittsburg v. Cochrane, 195 Okla. 593, 159 P.2d 534, 538 (1945) (determining that upon expiration of a franchise agreement, if the company "continues to furnish and the town accepts the service, an implied contract of indefinite duration arises"); see also B-C Cable Co. v. City and Borough of Juneau, 613 P.2d 616, 619 n. 5 (Alaska 1980); Village of Lapwai v. Alligier, 69 Idaho 397, 207 P.2d 1025, 1027 (1949). By specifically enforcing the payment provision of the implied contract, we satisfy the City's clear legal right to receive compensation reasonably related to FPC's use and occupation of the rights-of-way, and the regulatory and maintenance expenses incurred by the City as a result of that use.
In the absence of an implied contract, on the other hand, FPC would be unjustly enriched.[4] FPC continues to collect fees from consumers for electric service which include a pass-through component earmarked for payment of the six percent franchise fee. To the extent FPC discontinues its payments to Winter Park, it would receive a windfall in the form of a corresponding increase in revenue. It would be wholly inequitable to allow FPC to profit in this manner while the city's maintenance and public safety responsibilities continue unabated. See City of Las Cruces v. El Paso Electric Co., No. Civ- 95-385-LCS/JHG, *1242 1997 WL 1089567, at *3 (D.N.M.1997), aff'd, 166 F.3d 1220 (10th Cir.1999).
Moreover, any argument that franchise fee payments should cease during the pendency of protracted contract negotiations and follow-on litigation ignores the economic realities of utility service. By virtue of natural attrition and replacement, FPC's customer base in the City of Winter Park is constantly changing. Retroactive application of a pass-through fee would, therefore, unfairly benefit some customers and penalize others. The district court applied a far more appropriate remedy by maintaining the parties' status quo, likening FPC to a holdover tenant, and subjecting the utility to the six percent franchise fee until the current impasse is broken through either execution of the contractual buy-back provision or a new franchise agreement.
The conclusion we reach today requires that we disapprove the Second District's decision in Belleair, which we deem to be in error in two respects. First, the district court in that case determined that "without the franchise agreement to support the negotiated franchise fee, a 6% flat fee constitutes an illegal tax pursuant to Alachua because it bears no relationship to the actual cost of regulation or maintenance of Belleair's rights-of-way." Belleair, 830 So.2d at 854. If by this the court meant that percent-of-revenue fees, by definition, do not bear the required nexus to the actual costs of regulation, the decision has no foundation in controlling precedent. This Court has never determined that percent-of-revenue fees are per se unreasonable. Indeed, our effort to address the reasonableness of the fee in Alachua as an inquiry distinct from determining whether it was the product of a bargained-for exchange indicates that such is not the state of the law.
Second, we disapprove Belleair to the extent it provides that courts cannot extend the terms of expired franchise agreements to cover an interim period during which a holdover utility and the local government resolve the status of their relationship going forward. As explained above, the conduct and interaction of the parties, and balance of equities involved, may render such action necessary and proper. To exclude such a remedy from the reach of the courts would upset the balance of franchise negotiations and renegotiations, and threaten to disrupt sustainable electric service to the citizens of this state.

Conclusion
Based on the foregoing, we approve the decision of the district court below and disapprove the Second District's decision in Belleair as described herein.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] In 1913, Winter Park built and operated the City's electric system. In 1927, the City sold the system to FPC's predecessor. FPC acquired the electrical system in 1944, and renewed the franchise agreement twice with Winter Park, once in 1947 and again in 1971. The agreement signed in 1971 expired on January 12, 2001, but was extended by mutual agreement of the parties until June 12, 2001.
[2] Although for the sake of brevity we refer to the fee as six percent of gross revenues, the franchise agreement provides that the fee, when "added to the amount of all taxes, licenses, and other impositions levied or imposed by the grantor upon the Grantee's electric property, ... will equal 6% of Grantee's revenues" from the sale of electricity.
[3] Evidence adduced at trial included the total acreage occupied by FPC in the area, the total cost to the City of maintaining all of its rights-of-way, and the frequency with which City services responded to downed power lines.
[4] The elements of an unjust enrichment claim are "a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." Ruck Bros. Brick, Inc. v. Kellogg & Kimsey, Inc., 668 So.2d 205, 207 (Fla. 2d DCA 1995).