HAZOURI, J.
Plaintiffs/appellants, AMP Services Limited, Trustee for The Walter and Anna Bronner Trust, and Thomas Myers, as Personal Representative of the Estates of Walter Bronner Patrias and Anna Bronner (collectively the “plaintiffs”), appeal the trial court’s dismissal with prejudice of counts IV and VI of their Fourth Amended Complaint filed against defendants/appellees, Walanpatrias Foundation (the “Foundation”), Gislhaine Whyte, Mario Simmen, Paul-Marie Jacques and Elizabeth Schwartz (collectively the “defendants,” not including Schwartz).[1] Count IV is a claim by the plaintiffs against the Foundation and its trustees pursuant to sections 733.607(2) and 733.707(3), Florida Statutes (2003), for payment to Anna Bronner’s estate due to insufficient funds in the estate to pay the expenses of administration and the obligations of the estate. Count VI is an action by plaintiffs against the Foundation and the trustees for unjust enrichment for retaining and not contributing the amounts necessary to pay the expenses of administration and the obligations of the estate. The plaintiffs raise at least four issues on appeal. We affirm the trial court’s dismissal with prejudice of counts IV and VI. We find all issues raised to be without merit and write to address' only the first.
Walter Bronner Patrias (“Walter”) was a Colombian national who died on February 10, 1996, at age 89, and had no children. He was survived by his wife, Anna Gravert Bronner (“Anna”). Anna was a German national who died on January 15, 1999, at age 94, and had no children.
The Bronners met and married in Colombia, where Walter had a successful business. Several years before he died, Walter created a Panamanian corporation, Monavest Corporation, to hold their assets. They also had property in Broward County, Florida, including a condominium, personal property (automobile, jewelry, furniture, and artwork), and a small bank account. In the early 1980s, the Bronners moved to Monte Carlo, Monaco, from Co *348 lombia, where they resided until their deaths.
On August 17, 1995, Walter and Anna Bronner executed handwritten wills in Monaco. Walter’s will designated Anna and, alternatively, the Weizmann Institute of Science, as the residuary beneficiary of his estate. His will designated Harry Joseph as executor with authority to appoint a personal representative. Anna’s will designated Walter as the residuary beneficiary of her estate and, alternatively, the P.E.F. Israel Endowment Fund, Inc. Anna also designated Joseph as executor. Joseph was a longtime friend of the Bron-ners and a resident of Miami Beach, Florida. In September 1995, the Bronners instructed Joseph to create a trust which was to be “The Walter and Anna Bronner Trust.” It was to be funded by the assets held in the Monavest Corporation and was for the benefit of various charitable institutions in Israel.
After Walter died, an order of the Tribunal of First Instance of the Principality of Monaco was entered vesting possession of Walter’s estate in Anna as his universal legatee. On August 26, 1996, Anna executed a will in Monaco, revoking all prior wills and stating that it was her wish that 70% of the annual net income from her estate be distributed to certain charities. The will also stated that it was her intent to create a trust or foundation for this purpose and if she did not have time to create the trust or foundation, she named Whyte, who was her assistant, Jacques, a Monaco banker and Henry Rey, the “no-taire” with whom she deposited her will, to do it for her.
In February 1997, Anna met with Sim-men in Zurich, Switzerland and executed documents relating to the creation of the Liechtenstein “stiftung” called the Walan-patrias Foundation. Anna named four directors to the foundation, defendants, Sim-men, Whyte, and Jacques, and herself. The bylaws of the Foundation recite that the first purpose of the Foundation is to take care of Anna’s needs during her lifetime and, upon her death, the second purpose is to support philanthropic institutions through donations. In July 1998, the Bronners’ assets and those of the Mona-vest Corporation were transferred to the Foundation, which took place outside of Florida. The assets transferred did not include any of the Florida property.
Anna died on January 15, 1999, and her August 29 will was processed in Monaco. In January 2000, the Monaco Tribunal of First Instance entered an order vesting the Walanpatrias Foundation with Anna’s estate. The Foundation then sent an accountant to Florida to sell the condominium.
More than two years after Anna’s death, ancillary estates for both Anna and Walter were filed in Florida. An action against the two ancillary estates was filed by AMP, a St. Lucia, West Indies company with its principal place of business in Hong Kong, as assignee of Walter’s relatives, claiming that but for the actions of the individual defendants, Walter’s relatives would have received $193,000,000 from Anna’s estate. Thomas Myers, as personal representative and on behalf of the ancillary estates, admitted the allegations and consented to the entry of judgment. On May 27, 2003, a final judgment on the pleadings was entered against Myers, as personal representative, awarding AMP, as assignee, $193,651,984.06 against the ancillary estate of Anna.
After the ancillary estate judgment was entered, AMP and Thomas Myers sought statutory contribution to the estate pursuant to sections 733.607 and 733.707, Florida Statutes (2001), from the Foundation. In order to recover payment, plaintiffs brought this present action to enforce stat *349 utory contribution under the 2001 versions of these two statutes. However, the Foundation asserted in its motion to dismiss that the 1999 versions of section 733.607 and 733.707[2], which were in effect at the time of Anna’s death in 1999, apply and that plaintiffs failed to state a cause of action for statutory contribution pursuant to the 1999 versions. Plaintiffs argued that the amended versions, as provided in the Probate Code passed in 2001[3], were applicable because the statutes were remedial and not substantive law and therefore should be applied retroactively. The trial court held that the 1999 versions in effect at the time of Anna’s death were substantive and that Myers failed to state a cause of action for statutory contribution for payment of the 2003 judgment because it was not an “enforceable claim” within the meaning of the 1999 version of the statute.
When the Probate Code was passed in 2001, section 731.155, Florida Statutes (2001), provided:
Applicability. — This act shall take effect January 1, 2002. The substantive rights of all persons that have vested prior to January 1, 2002, shall be determined as provided in former chapters 63, 215, 409, 660, and 731-737 as they existed prior to January 1, 2002. The procedures for the enforcement of substantive rights which have vested prior to January 1, 2002, shall be as provided in this act, except that any Family Administration filed before January 1, 2002, may be completed as a Family Administration.
Myers argues that the 2001 versions of the statutes are remedial and not substantive law and therefore should be applied retroactively. Myers asserts that if the 2001 versions applied, then the 2003 judgment would be considered an obligation of the estate which is to be paid by the decedent’s trust. Under the 1999 version of section 733.607(2), if the assets of the estate are insufficient to pay the expenses of the administration of the decedent’s estate and enforceable claims of the decedent’s creditors, then the personal representative is entitled to payment from the trustee of the trust for those specific items.
*350 In Raphael v. Shecter, 18 So.3d 1152 (Fla. 4th DCA 2009), cited by both parties, this court held:
Although a substantive statute will not operate retrospectively, the general rule is that a procedural or remedial statute may operate retrospectively. Thus, whether section 766.118(4), Florida Statutes, is a change or amendment that is substantive or procedural in nature is an issue that is determinative of this case.
Substantive law prescribes “duties and rights” and procedural law amendments concern “means and methods.” Alamo Rent-A-Car v. Mancusi, 682 So.2d 1352, 1358 (Fla.1994). In Mancusi, the legislature limited the amount of punitive damages for causes of action arising on or after July 1, 1986, and the Legislature intended for a subsequent amendment to have an October 1, 1987, effective date. Although, the cause of action accrued in September 1986, the case was not filed until after the effective date of the change in punitive damages. “The establishment or elimination of such a claim is clearly a substantive, rather than a procedural, decision of the legislature because such a decision does, in fact, grant or eliminate a right or entitlement.” Id. at 1358.
Id. at 1156-57 (citation omitted). “Substantive rights cannot be adversely affected by the enactment of legislation once those rights have vested. Nor may the legislature increase an existing obligation, burden or penalty as to a set of facts after those facts have occurred.” Bitterman v. Bitterman, 714 So.2d 356, 363 (Fla.1998) (citation omitted).
The amendment to section 733.607(2) changing “enforceable claims of the decedent’s creditors” to “obligations of the decedent’s estate” increases the trust’s obligation to the personal representative. This increase in the trust’s obligation is clearly a substantive establishment of an additional claim.
This court has held “that an enforceable claim is a timely filed claim against the estate where no objection has been made by the personal representative or a timely filed claim against the estate where a timely objection has been made and a subsequent judgment has been entered in favor of the claimant or stipulation for payment has been reached.” Tobin v. Damian, 723 So.2d 396, 397 (Fla. 4th DCA 1999). The plaintiffs do not allege that AMP or Walter’s relatives were creditors of Anna or that they timely filed a claim in Anna’s ancillary estate.[4] Therefore, plaintiffs have failed to state a cause of action for statutory contribution because the estate judgment is not an “enforceable claim” within the meaning of the statute.
Plaintiffs also failed to state a claim for unjust enrichment. “The elements of an unjust enrichment claim are ‘a benefit conferred upon a defendant by the plaintiff, the defendant’s appreciation of the benefit, and the defendant’s acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.’ ” Fla. Power Corp. v. City of Winter Park, 887 So.2d 1237, 1241 n. 4 (Fla.2004) (citation omitted).
Plaintiffs allege that the defendants were unjustly enriched by failing to make *351 their statutory contribution to Anna’s ancillary estate. Because there is no “enforceable claim” against the defendants under sections 733.607(2) and 733.707(3), they have not been unjustly enriched by their failure to contribute funds to satisfy the estate judgment. Plaintiffs have failed to allege facts that support a prima facie case of unjust enrichment. The trial court properly dismissed with prejudice the unjust enrichment claim.

Affirmed.

TAYLOR and LEVINE, JJ., concur.

. Whyte, Simmen, and Jacques are trustees of the Walanpatrias Foundation.

. The 1999 versions of these sections provide: 733.607(2) If, after providing for statutory entitlements and all devises other than residuary devises, the assets of the decedent’s estate are insufficient to pay the expenses of administration of the decedent's estate and enforceable claims of the decedent’s creditors, the personal representative is entitled to payment from the trustee of a trust described in s. 733.707(3), in the amount the personal representative certifies in writing to be required to satisfy such insufficiency. 733.707(3) Any portion of a trust with respect to which a decedent who is the grant- or has at the decedent’s death a right of revocation, as defined in paragraph (e), either alone or in conjunction with any other person, is liable for the expenses of the administration of the decedent's estate and enforceable claims of the decedent’s creditors to the extent the decedent’s estate is insufficient to pay them as provided in s. 733.607(2).

. The 2001 versions provide:
733.607(2) If, after providing for statutory entitlements and all devises other than residuary devises, the assets of the decedent’s estate are insufficient to pay the expenses of the administration and obligations of the decedent’s estate, the personal representative is entitled to payment from the trustee of a trust described in s. 733.707(3), in the amount the personal representative certifies in writing to be required to satisfy the insufficiency.
733.707(3) Any portion of a trust with respect to which a decedent who is the grant- or has at the decedent’s death a right of revocation, as defined in paragraph (e), either alone or in conjunction with any other person, is liable for the expenses of the administration and other obligations of the decedent’s estate to the extent the decedent’s estate is insufficient to pay them as provided in s. 733.607(2).

. Section 733.710(1), Florida Statutes (1999), provides:
Notwithstanding any other provision of the' code, 2 years after the death of a person, neither the decedent’s estate, the personal representative (if any), nor the beneficiaries shall be liable for any claim or cause of action against the decedent, whether or not letters of administration have been issued, except as provided in this section.