COLVILLE ENVIRONMENTAL
SERVICES, INC.,
Appellant,

v.

NORTH SLOPE BOROUGH, Appellee.

No. S–4069.

Supreme Court of Alaska.

April 24, 1992.

G. Nanette Thompson, Law Office of G. Nanette Thompson, Anchorage, for appellant.

Darlene M. Erickson, Deputy Borough Atty., Alan R. Hartig, Borough Atty., North Slope Borough Law Office, Barrow, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

## I. INTRODUCTION

■ The principal question presented in this case is whether to allow a belated attack on the authority of the Alaska Public Utilities Commission (Commission) to issue a certificate of public convenience and necessity. The Commission granted Colville Environmental Services, Inc., (Colville) a certificate to operate a garbage collection utility in competition with garbage collection services offered by the North Slope Borough (Borough). The Borough was a party to the proceedings but did not raise a jurisdictional objection before the Commission and did not appeal. Five years later the Borough challenged Colville's certificate, contending that it was void because it violated AS 29.35.050, which gives the Borough the power to monopolize garbage collection services. We conclude that the Commission's decision issuing the certifi-

cate to Colville should be given res judicata effect.

## II. FACTS AND PROCEEDINGS

Beginning in 1962 Colville provided garbage collection and oil site cleanup services on the Arctic coastal plain between the Kuparuk River to the east and the Colville River to the west. Colville operated without a certificate of public convenience and necessity from the Commission.

In 1975 the Borough established by ordinance a garbage collection service east of the Kuparuk River. The Borough obtained a temporary certificate from the Commission for this area. Beginning at least as early as 1979, the Borough began providing garbage collection service west of the Kuparuk River. In 1981 Colville applied for a certificate. The Borough applied for an amendment to its certificate to extend its service to cover most of the same area in which Colville operated (the "overlap" area). Thus, in 1981, the Commission was faced with two largely conflicting certification requests. Both parties filed objections to the other's application.

Before the Commission ruled, Colville and the Borough stipulated to resolve the conflict. In the stipulation, each party withdrew its opposition to the other's application subject to certain conditions. The most important condition relevant to this appeal was condition 3(a), which prohibited Colville from providing "day-to-day" refuse collection services if the Borough was providing them.[1]

---

1. The conditions provide in paragraph 3:
    a. That [Colville] will not offer services which compete with the day-to-day refuse collection and pick-up services offered to the public-at-large by [the Borough] if the Borough is ready, willing and able to provide the day-to-day services.
    b. The primary business of [Colville] shall be the cleaning up of well sites and related areas pursuant to contracts between [Colville] and the owners/operators of the well sites.
    c. That [Colville] will deliver solid waste collected by it to [the Borough's] disposal sites or disposal facilities, including dumpsters, land fills or incinerators, when such facilities are accessible by road or other convenient and economically reasonable overland means.
    d. That [Colville] will pay all applicable tariffs of [the Borough] incidental to its deliv-

ery of solid waste to any disposal facility of [the Borough], and will segregate such solid waste as required by [the Borough].
    e. That whenever solid waste disposal facilities of [the Borough] are not available to [Colville], [Colville] will dispose of the solid waste it collects in conformity with all applicable federal, state and local laws and regulations.
Colville required two conditions expressed in paragraph 4:
    a. [The Borough] will make its solid waste disposal facilities, including dumpsters, landfills, and incinerators, available to [Colville] whenever such facilities are accessible by road or other convenient and economically reasonable overland means.
    b. [The Borough] will not offer services which compete with the well site and related

On February 8, 1982, the Commission approved the stipulation. It granted Colville a certificate "subject to the limitations agreed to in the Stipulation for Settlement." It also granted the Borough an amended certificate subject to the stipulation's limitations. However, the Commission imposed several additional conditions on the Borough. The most important condition was that within ninety days the Borough file an application to amend its certificate to include the entire North Slope Borough within its service area for garbage collection, including each of the villages in the Borough. Until such an application was filed, Colville would not be precluded from furnishing "day-to-day" refuse collection.

The Borough moved to modify the February 1982 decision asking the Commission to delete the condition that the Borough apply to modify its certificate to include the various villages. On August 17, 1982, the Commission denied this motion. Further, the Commission rejected altogether paragraph 3(a) of the stipulation, thus permitting Colville to permanently offer daily collection services in competition with the Borough. The Commission took this action for a number of reasons. First, the Commission noted:

> The Commission will not permit the [Borough] to have it both ways: on the one hand, to expand its existing service area but, at the same time, to state, in effect, that it will get around to serving the area in question when it feels like it and, on the other hand, to attempt to prevent others from furnishing a utility service essential to the preservation of the public health, welfare and safety where the [Borough] is not doing so.

The Commission also believed that 3(a) was anti-competitive, violated federal anti-trust laws, and was contrary to the public interest. The Borough did not contend that the Commission lacked subject matter jurisdiction to certify Colville as a competitor of

the Borough and did not appeal the order of August 17, 1982.

Later the Borough applied for an amended certificate to serve all the villages in the Borough. The Commission granted this in 1984. However, the Borough's certificate may not have covered all of Colville certified area. A few of the northernmost sections of the Colville River delta seem to have remained exclusive areas of operation for Colville.[2]

In 1987 Colville filed a complaint with the Commission, claiming that the Borough had operated contrary to its certificate by operating in Colville's claimed exclusive area. Colville also alleged that in the overlap area the Borough had prevented competition by passing an ordinance requiring potential customers to use the Borough's collection services and by conditioning the grant of land use permits on a permittee's continued use of the Borough's collection services. The Borough counterclaimed, alleging that the Commission had exceeded its authority in granting overlapping certificates for garbage collection because under AS 29.35.050, boroughs are authorized to monopolize garbage services within their boundaries.

After a hearing, the Commission's hearing officer issued a proposed decision, which was adopted by the full Commission with some modifications on July 19, 1988. Germane to the issues on appeal, the Commission found that the Borough's ordinance which required all customers in the overlap area to use the Borough's collection services was void because it conflicted with the orders and certificates issued by the Commission. The Commission also invalidated for the same reason the land use permits which were conditioned on a permittee's continued use of the Borough's collection services.

The Commission rejected on several grounds the Borough's counterclaim that the Commission had exceeded its authority in granting overlapping certificates for garbage collection. First, it held that this

---

area cleanup services offered by [Colville] if [Colville] is ready, willing, and able to provide the cleanup services.

**2.** This was disputed before the Commission and was not conclusively resolved.

argument was barred by the doctrine of res judicata:

> In [the competing 1981 applications of the parties] the Commission considered the question of whether or not a certificate which included an area within the boundary of [the Borough] should be granted to [Colville]. The Commission determined in that case that a certificate should be granted to [Colville], an Order granting that certificate was issued, and the Order became final without appeal. [The Borough] was a party to that case, stipulated to the grant of the certificate to [Colville], and did not appeal the grant of [Colville's] certificate. In these circumstances the doctrine of *res judicata* applies.

The Commission also held that the Borough had waived any right to contend that the August 17, 1982 order granting competitive certificates was void, and that the Borough was estopped from making that contention:

> [The Borough] entered into a stipulation with [Colville] which consented to the granting of a certificate to [Colville]; [the Borough] presented that stipulation to the Commission for approval; and [the Borough] neither protested nor appealed the Commission's grant of a certificate to [Colville]. Yet, according to the argument of [the Borough], it was free immediately after the foregoing actions to use its own ordinances to forbid [Colville] from operating and to forbid customers from using the services of [Colville]. The Commission strongly disagrees.

> The Alaska Supreme Court in *Guin v. Ha,* [591] P.2d 1281, [1291] (1979), stated: "In every contract ... there is an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to [receive] the benefits of the agreement." The stipulation between [Colville] and [the Borough] is a contract. It would be bad faith for [the Borough] to enter into an agreement with [Colville] and then take unilateral action to deny [Colville] the benefit of its bargain.

> The bad faith becomes even more pronounced when it is recalled that [the Borough] presented the agreement to a state regulatory body for approval based on a standard which required that the agreement be in the "public interest" and required for the "public convenience and necessity." To now allow [the Borough] to revoke, through its municipal ordinances, a certificate granted to [Colville] by the Commission with the consent of [the Borough] would not only perpetuate an act of bad faith by [the Borough] against [Colville], it would contradict [the Borough's] solemn representations before this body in securing approval for that stipulation. Such "trifling" with the processes of a public agency is not acceptable.

> The doctrine of equitable estoppel or quasi-estoppel does apply to this situation. Estoppel precludes a party from taking a position inconsistent with one it has previously taken where circumstances render assertion of the second position untenable. *Jamison v. Consolidated Utilities, Inc.,* 576 P.2d 97, 102 (Alaska 1978). Here, [the Borough] by its conduct of agreeing to the stipulation took a position that the public convenience and necessity required the services of [Colville] as a public utility; it cannot now assert that was untrue and that [Colville] should never have been granted the certificate.

> Therefore, based on the facts of this case, [the Borough] has no right whatsoever to assert that the actions which it agreed to in 1981 are void. Furthermore, the foregoing discussion applies equally whether or not the ordinances of [the Borough] prohibiting the operation of [Colville] and prohibiting customer's use of [Colville] were enacted by [the Borough] before or after the certificate was granted to [Colville] with the consent of [the Borough].[3]

**3.** The July 1988 decision ended with a number of orders, including the following:

 2. [The Borough] shall accept refuse delivered to its landfill or incinerator by [Colville].

 3. [Colville] shall pay to [the Borough] the tariffed rate for all refuse delivered by it to the landfill or incinerator of [the Borough].

The Borough appealed the Commission's decision, and later filed an action for declaratory judgment involving the interpretation of AS 29.35.050. The actions were consolidated. After both parties moved for summary judgment, the superior court found for the Borough in all significant respects. Specifically, the court held

> that the power granted by AS 29.35.050 to municipalities to establish a monopoly for garbage and solid waste services within its territory is a limit on the jurisdiction of [the Commission]. [Commission] orders purporting to restrict or eliminate this power are beyond [Commission] jurisdiction and therefore void. Therefore, municipalities can pass ordinances and set conditions establishing garbage and waste service monopolies that conflict with [Commission] orders.
>
> . . . .
>
> [N]o res judicata effect applies to administrative agency decisions that are beyond the agency's jurisdiction. Such decisions are void, and they can be brought before a court at any time for cancellation.

The superior court also rejected the Commission's conclusion that the Borough was estopped and had waived its right to contend that the Commission's August 1982 order was void. The court found that any reliance on the part of Colville would not have been reasonable after the passage of the Borough ordinance in June of 1983, which required everyone within the overlap area to use the Borough's refuse collection services. After passage of the ordinance, the court held that Colville could not legitimately assume that the Borough had acquiesced in the Commission's decision. Further, the court observed that Colville had not invested significant amounts of money based on any position taken by the Borough.

Despite finding that the August 1982 Commission decision was void, the court held that Colville's original February 1982 certificate was valid and that the provisions of the 1981 stipulation were also valid. However, the court held that the Commission did not have the power to enforce certain provisions of the stipulation. The superior court awarded attorney's fees of $7,000 and costs of $1,260.73 to the Borough as the prevailing party. Colville appeals.

## III. IS COLVILLE'S CERTIFICATE VALID?

On August 17, 1982, the Commission granted Colville a certificate to provide daily refuse collection. The Borough claims that the Commission lacked the power to do this on the grounds that AS 29.35.050 grants the Borough the *exclusive* power to collect garbage. Thus, the Borough argues that the certificate is invalid.

■■■ Since the Borough already had the opportunity to litigate this issue in the proceedings which the Commission conducted culminating in the final order of August 1982, the Borough normally would be precluded from litigating this question now. Restatement (Second) of Judgments § 12 (1982).[4] However, a judgment does not have preclusive effect when:

> (1) The subject matter of the action was so plainly beyond the [adjudicative agency's] jurisdiction that its entertaining the action was a manifest abuse of authority; or
>
> (2) Allowing the judgment to stand would substantially infringe the authori-

---

4. [Colville] shall deliver all solid waste collected by it to the facilities of [the Borough] if those facilities are accessible by road or other convenient and economically reasonable overland means.

5. [Colville] and [the Borough] shall negotiate a mutually acceptable joint operating agreement to resolve difficulties of insurance, scheduling, equipment interface, and similar matters affecting delivery of waste by [Colville] to the incinerator of [the Borough].

4. The rule of res judicata applies to administrative agencies as well as courts. Restatement (Second) of Judgments § 83 (1982). *See also Jeffries v. Glacier State Tel. Co.*, 604 P.2d 4, 8 (Alaska 1979) ("Although the principles of issue preclusion have been developed in a judicial setting, we agree with the modern and generally accepted view that the doctrine of res judicata may be applied to adjudicative determinations made by administrative agencies." (Footnotes omitted.))

ty of another tribunal or agency of government; or

(3) The judgment was rendered by [an adjudicative agency] lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the [adjudicative agency's] subject matter jurisdiction.

*Id.* Each of these exceptions is separately analyzed.

1. *Is the granting of a certificate to perform daily refuse collection plainly beyond the Commission's authority?*

██ The legislature established the "general powers and duties" of the Commission in AS 42.05.141. Subsection (a)(1) of this statute provides that the Commission may (1) "regulate every public utility engaged or proposing to engage in such a business inside the state ... and the powers of the commission shall be liberally construed to accomplish its stated purposes." We recently observed concerning this subsection:

This provision presents two guiding principles for determining the extent of the [Commission's] jurisdiction under specific provisions of the Act. On the one hand, it includes the principle of limitation, restricting the [Commission's] power to the specific jurisdictional areas of its "stated purposes." On the other hand, it includes a principle of expansion, mandating that the [Commission's] power to act within its specific areas of jurisdiction "is to be liberally construed."

*Homer Elec. Ass'n v. City of Kenai,* 816 P.2d 182, 186 (Alaska 1991).

In *Homer Electric,* we gave as an example of a specific jurisdictional area within the stated purposes of the Commission the Commission's power to determine the reasonableness of use permit fees. *Id.* (citing *B-C Cable Co. v. City and Borough of*

*Juneau,* 613 P.2d 616 (Alaska 1980)). In contrast, we cited *Greater Anchorage Area Borough v. City of Anchorage,* 504 P.2d 1027 (Alaska 1972), as an example of a case where a dispute was beyond the stated powers of the Commission. The controversy in that case was whether the borough, as owner of a road right-of-way, could prevent the city electrical utility from installing a power line on the right-of-way.[5] Discussing this case in *Homer Electric,* we stated:

Our opinion ... relied substantially upon an interpretation of the overall design of the [Commission] Act, which, we found, very selectively empowers the [Commission]. We wrote:

The essence of the administrative power conferred upon the [Commission] is regulatory; the Commission is empowered to set rates, promulgate regulations, collect information, process complaints against utilities and the like. The statutory framework, however, does not grant unlimited adjudicatory authority to the [Commission]. The agency is not empowered to decide disputes between municipalities over the control of construction activities within rights of way belonging to one of the disputants.

*Id.* at 186 (quoting *Greater Anchorage Area Borough,* 504 P.2d at 1033).

Regarding the jurisdiction of the Commission, we summarized our discussion in *Homer Electric* as follows:

In *Greater Anchorage,* then, we narrowly construed the stated purpose of a statute granting the [Commission] adjudicatory power and found the dispute at issue outside the scope of the agency's jurisdiction. In *B-C Cable,* having no doubt that the tax issue fell within the narrow scope of [Commission] jurisdiction to review a particular type of dispute, we liberally construed the agency's power within that scope and refused to interfere. In sum, we have construed

---

5. We stressed in *Greater Anchorage Area Borough* that the question presented "did not involve interpretation of a utility's certificate of public convenience and necessity. Further, the controversy ... does not involve competing utilities seeking to provide the same service to a single consumer." *Id.* at 1033–34.

AS 42.05.141(a)(1) to mean that the actual areas in which the [Commission] may exercise its adjudicatory authority are quite narrow. Within those narrow areas, however, the [Commission's] powers to adjudicate are plenary, as broad as the specific provisions of the Act permit.

*Id.* at 186–87.

We applied these principles in *Homer Electric*, where the controversy went to the reasonableness of fees imposed by a municipality on the use of rights-of-way by a utility. This came within the Commission's statutory power to decide disputes as to the reasonableness of "fees, terms, conditions, or exceptions imposed on the utility's permit to use municipal rights-of-way." AS 42.05.251.

The dispute in this case falls within another area in which the Commission is empowered to exercise its adjudicatory authority. Public utilities, including those operated by municipalities, must obtain certificates of public convenience and necessity from the Commission.[6] The Commission is empowered to attach conditions to a certificate of public convenience and necessity under AS 42.05.241:

> A certificate may not be issued unless the commission finds that the applicant is fit, willing and able to provide the utility service applied for and that the services are required for the convenience and necessity of the public. The commission may issue a certificate granting an application in whole or in part and attach to the grant of it the terms and conditions it considers necessary to protect and promote the public interest including the condition that the applicant may or shall serve an area or provide a necessary service not contemplated by the applicant.

Further, the Commission is empowered to amend, modify, suspend, or revoke a certificate after notice and opportunity to be heard. AS 42.05.271 provides in part:

> Upon complaint or upon its own motion, the commission, after notice and opportunity for hearing and for good cause shown, may amend, modify, suspend or revoke a certificate, in whole or in part.

The August 1982 order of the Commission deleted a condition from Colville's certificate which barred Colville from offering day-to-day collection services when such services were provided by the Borough. This action fell squarely within the adjudicatory authority granted the Commission by AS 42.05.271. Thus, using the approach we adopted in *Homer Electric*, the Commission was within its adjudicatory authority when it entered the order of August 1982.

> 2. *Would allowing the decision of the Commission to stand substantially infringe on the authority of another tribunal or agency?*

Restatement (Second) of Judgments § 12(2) (1984), provides that a judgment does not have preclusive effect when "allowing the judgment to stand would substantially infringe on the authority of another tribunal or agency of the government."

(a) This subsection does not apply in the present case because here the Borough is both "another agency of government" and the party which failed to appeal in a timely manner. Allowing the order to stand will not have substantial consequences except to the litigants. Since the order does not disable the Borough from eliminating Colville as a competitor by purchase or eminent domain under AS 29.35.050(b),[7] applying the rule of res judicata to the order does not "seriously disturb[ ] the distribution of governmental powers." Restate-

---

**6.** AS 42.05.221(a) provides:

A public utility may not operate and receive compensation for providing a commodity or service after January 1, 1971 without first having obtained from the commission under this chapter a certificate declaring that public convenience and necessity require or will require the service.... A certificate must de-

scribe the nature and extent of the authority granted in it, including, as appropriate for the services involved, a description of the authorized area and scope of operations of the public utility.

**7.** The statute is set forth in footnote 8, *infra.*

ment (Second) of Judgments § 12 comment d (1982). The Borough has not permanently lost its monopoly power; the power can be restored by paying fair market value for Colville. Viewed in this light the Borough has suffered a monetary detriment; it has lost only what a private litigant normally loses when an adverse judgment is not appealed.

(b) Alternatively, we conclude that even if subsection (2) were applicable there would be no substantial infringement of Borough authority. The Borough's claim that the Commission's August 1982 order substantially infringes on its authority to monopolize refuse collection requires that AS 29.35.050 be examined in some detail.[8]

Subsection (a) grants the Borough the exclusive power to collect garbage by requiring "all persons ... to use the [Borough's] system." However, before the Borough can lawfully create a garbage collection system, it must obtain a certificate from the Commission. AS 42.05.221.

Thus, before the Borough can lawfully exercise its AS 29.35.050(a) monopoly power, it must obtain a certificate. In granting a certificate, the Commission may "attach to the grant ... terms and conditions it considers necessary to protect and promote the public interest including the condition that an applicant may or shall serve an area or provide a necessary service not contemplated by the applicant." AS 42.05.241.

In the present case, the Borough's application for a certificate to provide garbage collection in the overlap area did not include all the communities within the Borough's boundaries. The Commission made it clear to the Borough that it would reject paragraph 3(a) of the stipulation unless the Borough provided garbage collection for all the communities.[9] In insisting on this addition, the Commission was fulfilling its responsibility under AS 42.05.241 to "protect and promote the public interest." When the Borough failed to amend its application to include all the communities, the Commission rejected paragraph 3(a) in its August

---

8. The statute provides in relevant part:

(a) Notwithstanding AS 29.35.200–29.35.-220, a municipality may by ordinance

(1) provide for the establishment, maintenance, and operation of a system of garbage and solid waste collection and disposal for the entire municipality, or for districts or portions of it;

(2) require all persons in the municipality or district to use the system and to dispose of their garbage and solid waste as provided in the ordinance;

(3) award contracts for collection and disposal, or provide for the collection and disposal of garbage and solid waste by municipal officials and employees;

(4) pay for garbage and solid waste collection and disposal from available money;

(5) require property owners or occupants of premises to use the garbage and solid waste collection and disposal system provided by the municipality;

(6) fix charges against the property owners or occupants of premises for the collection and disposal; and

(7) provide penalties for violations of the ordinances.

(b) the governing body of a municipality may not prohibit a person holding a valid certificate from the Alaska Public Utilities Commission from continuing to collect and dispose of garbage, refuse, trash, or other waste material, or provide other related ser-vices in an area in the municipality if the certificate authorizes the collection and disposal of garbage, refuse, trash, or other waste material and providing of other services in the area, and the certificate was originally issued before the municipality provided similar services. Except as provided in (c) of this section, a municipality may not provide for a garbage, refuse, trash, or other waste material collection and disposal service in an area to the extent it lies in an area granted to a garbage, refuse, trash or other waste material carrier by a certificate issued by the Alaska Public Utilities Commission to the carrier until it has purchased the certificate, equipment and facilities of the carrier, or that portion of the certificate that would be affected, at fair market value. A municipality may exercise the right of eminent domain to acquire the certificate, equipment and facilities of the carrier, or that portion of the certificate that would be affected.

AS 29.35.050 (Enacted in 1972 and 1973 in substantially its present form. Chap. 118 SLA 1972 § 2, Chap. 76 SLA 1973 § 5.).

9. Paragraph 3(a) provides:

That [Colville] will not offer services which compete with the day-to-day refuse collection and pick-up services offered to the public-at-large by [the Borough] if the Borough is ready, willing and able to provide the day-to-day services.

1982 order.[10] We therefore conclude that the order was valid when made.

■■■ The Borough, however, contends that it has the power to exclude Colville from collecting garbage by ordinance. This argument apparently applies even if the August 1982 order was initially valid. If this argument is correct, arguably res judicata effect should not be given to the August 1982 order as the order might be a substantial infringement on the authority of the Borough. For two independent reasons we conclude that this is not the case.

First, AS 42.05.641 provides that in cases of conflict between a certificate and a local ordinance, the certificate will prevail:

> The commission's jurisdiction and authority extend to public utilities operating within a municipality, whether home rule or otherwise. In the event of a conflict between a certificate, order, decision or regulation of the commission and a charter, permit, franchise, ordinance, rule or regulation of such a local governmental entity, the certificate, order, decision or regulation of the commission shall prevail.

This statute grants priority to certificates which are valid when they are issued over ordinances which might otherwise be valid, except for the fact that they conflict with a certificate. Applying the statutory order of priority to this case means that giving continued effect to the August 1982 order does not infringe on Borough authority.

Second, the first sentence of subsection (b) of AS 29.35.050 is a limitation on the authority of a municipality to exercise monopoly power by ordinance under subsection (a)(2) of section 050. Subsection (b) bars a municipality from prohibiting "a person holding a valid certificate ... from continuing to collect and dispose of garbage ... if ... the certificate was originally issued before the municipality *provided similar services.*" (Emphasis supplied.) Whether this limitation applies is dependent on the meaning of the emphasized phrase "provided similar services." Does it refer to services provided by the Borough before the Borough received a certificate, which would be unlawful, or only to lawfully performed services? We hold that it refers only to lawfully provided services.

The legislative history of AS 29.35.050 is relevant to this inquiry. Before 1973 municipalities could operate garbage collection utilities without a certificate of public convenience and necessity. In 1973 municipalities were required to obtain certificates before offering such services. Chap. 76 SLA 1973 § 3. In 1970 the predecessor of AS 29.35.050(b) was enacted. However, it only applied to permits "originally issued before the area was annexed by the [municipality]." Chap. 218 SLA 1970 § 5. In 1973 AS 29.35.050(b) was enacted in substantially its present form. Chap. 76 SLA 1973 § 5. This was part of the *same enactment* which required municipally owned garbage utilities to *obtain certificates* from the Commission before operating. This history lends support to the view that AS 29.35.050(b) was not intended to apply to cases in which the similar services provided by a municipality were provided in violation of state law.[11]

Section 29.35.050 must also be considered against the backdrop of the general regulatory system encompassed in Title 42 of the Alaska Statutes. As previously discussed, municipalities cannot provide garbage collection services without a certificate issued by the Commission. The Commission is vested with broad discretionary authority in matters concerning the issuance and amendment of certificates. If a certificate conflicts with a municipal ordinance, the certificate controls. This regulatory system indicates that the legislature accorded much importance to the certification process. Thus, it is difficult to believe that the legislature intended AS 29.35.050(b) to reward a municipality's violation of this process.

---

**10.** The Commission's reasoning is quoted on page 343, *supra.*

**11.** *See also Simpler v. State Commercial Fisheries,* 728 P.2d 227, 230 (Alaska 1986) (unlawful fishing is not recognized for purposes of grandfather rights fisheries statute, AS 16.43.260).

Therefore, we hold that the phrase "provided similar services" in AS 29.35.050(b) refers only to lawfully performed services. It follows since the Commission simultaneously issued the Borough's certificate and Colville's certificate, Colville's certificate was issued before the Borough lawfully provided similar services. The Borough is barred by the first sentence of 29.35.-050(b) from prohibiting Colville from continuing to collect garbage.[12] Giving continuing effect to Colville's certificate does not infringe on Borough authority.

3. *Was the Commission capable of making an adequately informed determination of its own jurisdiction?*

The Commission clearly possessed the capability of determining its own jurisdiction. The members of the Commission are full-time officers of the state, some of whom must have professional qualifications. AS 42.05.040. The Commission has a professional staff and the Attorney General serves as legal counsel for the Commission. AS 42.05.121, 111. Thus, any challenge to subject matter jurisdiction of the Commission could have been given "substantially the same quality of consideration that is available in a trial court of general jurisdiction." Restatement (Second) of Judgment § 12, comment (e) (1982).

IV. DOES THE COMMISSION HAVE THE POWER TO ENFORCE A STIPULATION REQUIRING THE BOROUGH TO ACCEPT REFUSE FROM COLVILLE AT THE BOROUGH'S NORMAL TARIFF RATE?

In July 1988 the Commission ordered the Borough to accept refuse from Colville at the Borough's tariff rates for this service.[13] This order enforced the 1981 stipulation between Colville and the Borough which among other things requires the Borough to accept refuse from Colville at the Borough's tariff rates for this service and provides that the Commission can enforce this stipulation.[14] The trial court held that the Commission had no subject matter jurisdiction to enforce this section of the stipulation because the Commission's "authority does not extend to regulation of the final disposal cite." We reverse.

Since the Borough already had the opportunity to litigate this issue in the proceedings which the Commission conducted culminating in the Commission's approval of the stipulation in February 1982, the trial court normally would be precluded from considering this issue now. Restatement (Second) of Judgments § 12 (1982).[15] However, as we noted earlier, a judgment does not have preclusive effect when:

(1) The subject matter of the action was so plainly beyond the [adjudicative agency's] jurisdiction that its entertaining the action was a manifest abuse of authority; or

(2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or

(3) The judgment was rendered by [an adjudicative agency] lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belat-

---

12. Nothing we have expressed herein will foreclose the Borough from eliminating Colville as a competitor by purchase or eminent domain.

13. *See supra* note 3.

14. Specifically, the stipulation provides:
    That [Colville] will pay all applicable tariffs of [the Borough] incidental to its delivery of solid waste to any disposal facility of [the Borough], and will segregate such solid waste as required by [the Borough].
    . . . .

[The Borough] will make its solid waste disposal facilities, including dumpsters, landfills, and incinerators, available to [Colville] whenever such facilities are accessible by road or other convenient and economically reasonable overland means.
    . . . .
[The Commission] shall have administrative jurisdiction over any dispute which may arise between [Colville and the Borough] incident to this stipulation.

15. *See supra* note 4.

edly to attack the [adjudicative agency's] subject matter jurisdiction.

*Id.* We conclude that these three exceptions do not apply and thus the trial court erred in reconsidering the issue of whether the Commission could enforce the stipulation.

1. *Was the Commission's approval of the stipulation's enforcement provision plainly beyond the Commission's authority?*

As we noted earlier, when issuing a certificate of public convenience to operate a refuse collection service, the Commission has broad powers to attach "terms and conditions it considers necessary to protect and promote the public interest." AS 42.-05.251. The provision at issue granted the Commission the right to enforce a stipulated refuse collection agreement. The Commission's approval of this provision arguably fell within its broad powers to protect and promote the public interest. Thus, the Commission's approval of this provision was not plainly beyond its authority.

2. *Would allowing the decision of the Commission to stand substantially infringe on the authority of another tribunal or agency?*

As the trial court noted, the Alaska Department of Environmental Conservation (Department) has authority over the rates and operations of final waste disposal sites. AS 46.03.020. The Commission's order re-

quiring the Borough to accept refuse at the Borough's normal tariff rates does not substantially infringe on this authority because the order does not impair the Department's ability to control the amount of the tariff or the disposal of the refuse.[16]

3. *Was the Commission capable of making an adequately informed determination of its own jurisdiction?*

As previously discussed, the Commission clearly possessed the capability of determining its own jurisdiction. *See supra,* pp. 349–350.

## V. CONCLUSION

We conclude that the superior court erred in refusing to accord res judicata effect to the Commission's orders of February and August 1982. The judgment must therefore be reversed; it follows that the court's award of attorney's fees and costs must likewise be reversed.

REVERSED and REMANDED for further proceedings consistent with this opinion.

---

**16.** AS 46.03.020 lists the powers of the Department. It provides that the Department may:
(1) enter into contracts ...;
(2) review and appraise programs and activities of state departments and agencies ... for the purpose of determining the extent to which the programs and activities are [protecting the state's environment and natural resources] ...;
(3) consult with [individuals and organizations concerned with the environment];
(4) appear and participate in proceedings before any state or federal regulatory agency involving or affecting the purposes of the department;
(5) undertake studies ... it may consider essential to the accomplishment of the purposes of the department ...;
(6) ... enter and inspect ... any property ... to ascertain compliance [with its regulations] ...;
(7) conduct investigations and hold hearings ...;
(8) advise and cooperate with [other agencies];
(9) act as the official agency of the state in all matters affecting the purposes of the department under federal laws ...;
(10) adopt regulations necessary to [protect the state's environment and natural resources];
(11) ... propose ... licenses, permits and authorizations ...;
....
(13) inspect the premises of sellers and suppliers of paint, vessels and marine and boating supplies....
The Commission's order does not substantially infringe any of these powers.