Dale CALHOUN and Joyce Calhoun d/b/a Paramount General Construction Company, Appellants,

v.

STATE of Alaska, DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES, Appellee.

No. S–5203.

Supreme Court of Alaska.

Aug. 20, 1993.

Rehearing Denied Sept. 21, 1993.

Dale Calhoun, pro se, for appellants.

Paul R. Lyle, Asst. Atty. Gen., Fairbanks, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

*OPINION*

RABINOWITZ, Justice.

## I. INTRODUCTION

Calhoun, a construction contractor, appeals from a grant of summary judgment in favor of the State. The superior court held that Calhoun's claims against the state were barred under the doctrine of res judicata. We affirm.

## II. FACTS AND PROCEEDINGS

In 1985, the Calhouns, d/b/a Paramount Construction, ("Calhoun") and the State of Alaska, Department of Transportation and Public Facilities ("DOT & PF") entered into a contract for the construction of a hangar and a generator in Coldfoot. The contract contained a claims and dispute resolution provision.[1] Throughout construction there were numerous disputes between Calhoun, DOT & PF, the subcontractors and the designers. In April 1987, Calhoun submitted a claim for additional costs and other charges, in the sum of $309,556.55, to DOT & PF's contracting officer.

On July 30, 1987, Calhoun received a letter from his surety, USF & G. The letter stated that the surety believed that Calhoun's account was no longer viable and that it would limit bonding of Calhoun to single jobs up to $100,000. After receiving this letter, Calhoun initiated a series of correspondence with DOT & PF. Calhoun claimed that the DOT & PF's failure to pay Calhoun's additional costs resulted in his loss of bonding and impaired his ability to conduct business.

In the course of the correspondence, Calhoun inquired whether the contracting officer had authority to adjudicate the bonding claim. After receiving clarification from Calhoun concerning the claim, the contracting officer informed Calhoun that "the claim regarding bonding problems [was] one which must be ruled upon by the Contracting Officer." Calhoun indicated he did not believe this claim could be handled by the claims process, and thus never submitted the bonding claim to the contracting officer for adjudication. In February 1988, the contracting officer denied all of the

---

1. The claims and disputes specification read, in part:

   A. If the Contractor becomes aware of any act or occurrence which may form the basis of a claim by the Contractor for additional compensation or an extension of time for performance, the Contractor shall immediately inform the Project Manager. If the matter cannot be resolved by agreement or change document within 7 days, the Contractor shall, within the next 14 days, submit written notice of the facts which may form the basis of the claim. In addition, all claims by the Contractor for additional compensation or an extension of time of performance or any dispute regarding a question of fact or interpretation of the contract shall be presented in writing by the Contractor to the Project Manager within the next 60 days unless the Project Manager agrees in writing to an extension of time for good cause shown....

   B. In presenting the claim, the Contractor shall specifically include, to the extent then possible, the following:

   1. The contract provisions which apply to the claim and under which it is made;

   2. the bid items and quantities, if any, upon which the claim is based;

   3. the specific relief requested, including additional compensation claimed and the basis upon which it was calculated and/or the additional time requested and the basis upon which it was calculated.

claims Calhoun had submitted in April 1987 except one $380 item.

In November 1988, Calhoun filed a complaint in the superior court alleging, among other things: breach of contract; new and different contract; unjust enrichment/quantum meruit; and the surety bond loss claim.[2] In September 1989, the superior court dismissed Calhoun's 1988 complaint, holding that Calhoun should have taken an administrative appeal from the contracting officer's February 1988 decision rather than instituting an independent superior court action.

In November 1989, Calhoun filed an administrative appeal to the contracting officer's February 1988 decision. He stated the following points on appeal: the administrative officer's findings as to the absence of coercion were not supported by the evidence; he was not afforded due process; the administrative officer's decision was made without affording him an opportunity to be heard or to cross-examine or to question witnesses; and the administrative officer's decision was erroneous because he was coerced by DOT & PF as to the manner in which he performed the contract. Calhoun failed to raise as a point on appeal, or to address, the loss of bonding claim. The superior court, Judge Pengilly, affirmed the February 1988 findings and conclusions of the contracting officer. Calhoun then appealed to this court. This first appeal was subsequently dismissed due to Calhoun's failure to prosecute.

In October 1991, Calhoun filed the complaint which led to this appeal. The complaint raised the following issues: DOT & PF caused Calhoun to lose all of his bonding capabilities; DOT & PF breached the Coldfoot contract; DOT & PF took unjust advantage of Calhoun by means of coercion and intimidation; and DOT & PF committed fraud/defamation. DOT & PF moved to dismiss the 1991 complaint pursuant to Civil Rules 12(b)(1) and 12(b)(6), asserting that the claims alleged were barred by res

judicata. The superior court, Judge Greene, treated DOT & PF's motion as a motion for summary judgment, which it granted. Calhoun now appeals the superior court's grant of summary judgment and consequent dismissal of his 1991 complaint.

## III. DISCUSSION

### A. Standard of Review

■ In reviewing a grant of summary judgment, we must determine whether a genuine issue of material fact exists and, if not, whether the moving party is entitled to judgment as a matter of law. *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985).

### B. Should Calhoun's 1991 Claims Have Been Barred by Res Judicata?

We have set forth our position on res judicata in *DeNardo:*

> Under the doctrine of res judicata, a judgment on the merits of the controversy bars subsequent actions between the same parties upon the same claim. The doctrine implements "the generally recognized public policy that there must be some end to litigation and that when one appears in court to present his case, is fully heard, and the contested issue is decided against him, he may not later renew the litigation in another court." It is settled that res judicata precludes relitigation by the same parties, not only of claims raised in the first proceeding, but also of those relevant claims that could have been raised. The claims extinguished by the first judgment include "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction ... out of which the action arose," a mere change in the legal theory asserted as a ground for recovery will not avoid the preclusive effect of the judgment.

**2.** The surety loss claim sounded in contract, reading:

Defendant's contractural [sic] and/or quasi-contractural [sic] breaches has [sic] resulted

in the loss of plaintiff's surety bond and resulted in a loss of plaintiff's ability to contract in the State of Alaska.

*DeNardo v. State,* 740 P.2d 453, 455–56 (Alaska 1987), appeal dismissed, *cert. denied,* 484 U.S. 919, 108 S.Ct. 277, 98 L.Ed.2d 239 (1987) (citations omitted).[3]

DOT & PF contends that each of the four separate claims at issue in this appeal are barred. More particularly, DOT & PF argues that the requirements of res judicata are met in this instance. First, the superior court rendered a final judgment in 1989 on the merits of Calhoun's administrative appeal. Secondly, the parties to the 1988 superior court complaint, the 1989 administrative appeal to the superior court, the 1991 appeal to this court, the 1991 superior court complaint, and the instant appeal are all the same. Thirdly, the claims alleged in the 1991 superior court complaint arise out of the same transaction, namely the Coldfoot Hangar construction contract, as did the 1988 superior court complaint claims. Finally, the claims alleged in the 1991 complaint were raised or could have been raised in the 1989 administrative appeal.

Our review of the record persuades us that DOT & PF's contentions are correct, that the elements of res judicata are satisfied, and that the superior court appropriately applied res judicata to bar each of the claims now in question.[4]

**3.** DOT & PF has summarized the above quoted passage from *DeNardo* to state a four element test. Res judicata precludes litigation of an issue in the following situations:
(1) a judgment on the merits has been rendered;
(2) the new claims arose out of the same transaction as the previous claims;
(3) the second case is between the same parties;
(4) the new claim was, or could have been, decided in the first case.

**4.** We further note that no exceptions to the bar of res judicata have been shown to be applicable.

**5.** In regard to this issue the superior court stated:
The 1991 complaint describes the contract in question as the contract between Paramount and DOT/PF for the construction of "DOT Project # R–20066, Coldfoot Hangar/Generator Addition located at Coldfoot, AK."

### 1. Breach of Contract Claim

■ Calhoun's 1988 superior court complaint contained a breach of contract claim, which he did not pursue in his 1989 administrative appeal to the superior court from the contracting officer's 1988 decision. Given the foregoing, the superior court ruled that the contract claim alleged in Calhoun's 1991 superior court complaint was barred by operation of the principles of res judicata because Calhoun did not preserve it in his 1989 administrative appeal.[5]

We find no error in the superior court's ruling that res judicata bars this 1991 breach of contract claim.

### 2. The Coercion Claim

■ The first point in Calhoun's 1989 administrative appeal was that there was no support in the evidence for the administrative officer's findings as to the absence of coercion. The fourth point in that appeal argued that the administrative officer's decision that Calhoun had failed to comply with certain of the contract provisions was in error. Calhoun claimed that he was coerced by the DOT & PF as to the manner in which he both performed the contract and brought disputes before the agency under the contract.

However, the 1988 complaint contained a breach of contract claim based on the theory that DOT/PF prevented Paramount from fully performing the contract by creating unreasonable delays and effecting numerous change orders. Even though the superior court directed Paramount to file this claim as an appeal of the contracting officer's decision on its claims for equitable adjustment, Paramount declined to appeal this claim. Rather, its appeal focussed on due process and coercion issues.

Plaintiff has submitted no evidence to show that this breach of contract claim differs from the one previously litigated. The complaint and all the available evidence demonstrates that Paramount's "new" breach of contract is nothing but the same one litigated to final judgment. Consequently, the court finds that the breach of contract claim is barred by the doctrine of res judicata.

In deciding the 1989 administrative appeal Judge Pengilly rejected these arguments, stating:

> [Calhoun] also argues that [the contracting officer] erred in rejecting its claim of "coercion," but declines to specifically identify any coercive behavior on the part of DOT [ & PF's] representatives. The court's independent review of the record bears out [the contracting officer's] conclusion that the only factual basis for this complaint lies in DOT [ & PF]'s "enforcement of standard operating procedures and provisions of the contract documents." That conclusion "has a reasonable basis in law and fact," and is therefore affirmed. *See Tarbox v. Alaska Transportation Commission,* 687 P.2d 916, 919 (Alaska 1984).

In granting summary judgment to DOT & PF as to Calhoun's 1991 coercion claim Judge Greene noted that Calhoun failed to distinguish the 1991 coercion claim from the coercion claim litigated in the 1989 administrative appeal.[6]

On the basis of the foregoing we conclude that the superior court correctly held that Calhoun's 1991 coercion claim was barred by res judicata.

### 3. The Fraud/Defamation Claims

Calhoun's 1988 superior court complaint contained three separate fraud/misrepresentation claims. The superior court directly addressed these claims in its 1989 order requiring Calhoun to file an administrative appeal as to these claims. In correctly barring these claims on the basis of res judicata the superior court in part held:

**6.** In its Memorandum Decision and Order, the superior court stated:
> However, plaintiff has neither delineated nor supplied evidence of the specific facts supporting this coercion claim. [Calhoun], as a matter of law, has failed to meet its burden of demonstrating that this is not the same claim. As a result, the court finds the coercion claim is likewise barred under the doctrine of res judicata.

**7.** As to this last claim, Judge Greene noted that under the terms of the 1989 dismissal of Calhoun's 1988 complaint, Calhoun was provided the opportunity to raise his loss of bonding claim in the subsequent administrative appeal.

The evidence in the record does not indicate whether the fraud/misrepresentation issues were brought before the contracting officer. Yet, even if distinct fraud/misrepresentation claims were raised, they were not appealed to the superior court. Plaintiff's apparent failure to pursue this claim does not prevent the operation of res judicata. *See Dennis v. Fiscal Court of Bullitt County,* 784 S.W.2d 608, 611 (Ky.App.1990).

Thus the superior court correctly held that res judicata barred Calhoun's fraud/misrepresentation claims.

### 4. The Loss of Bonding Claim

On the issue of the bonding claim, the superior court held that Calhoun's 1991 claim was barred by res judicata.[7] We affirm the superior court's holding, but rest our decision on a different basis.[8] We hold that Calhoun's bonding claim is barred by application of administrative res judicata.

We have previously held that "[a]lthough the principles of issue preclusion have been developed in a judicial setting, we agree with the modern and now generally accepted view that the doctrine of res judicata may be applied to adjudicative determinations made by administrative agencies." *Jeffries v. Glacier State Tel. Co.,* 604 P.2d 4, 8 (Alaska 1979) (citations omitted). Thus if a claim could have been raised before an agency in a prior administrative hearing, res judicata precludes subsequent litigation of the same claim. *Colville Envtl. Servs. v. North Slope Bor-*

Applying the principles of res judicata, the superior court thus held that Calhoun's failure to raise the bonding issue in the administrative appeal barred his 1991 attempt to revive the same loss of bonding claim. *Tolstrup v. Miller,* 726 P.2d 1304, 1306 (Alaska 1986) (res judicata bars a second suit when the claims were transactionally connected and the matter could have been decided in the first suit).

**8.** We have held that "[t]his court is not bound by the reasoning articulated by the trial court and can affirm a grant of summary judgment on alternative grounds." *Wright v. State,* 824 P.2d 718, 720 (Alaska 1992).

**1196**

*ough,* 831 P.2d 341, 345 (Alaska 1992). Because Calhoun had the opportunity to litigate the loss of bonding claim before the contracting officer in 1987, he is precluded from litigating the same claim under his 1991 superior court complaint.

■ We noted in *Colville,* however, three instances when a final administrative judgment does not have preclusive effect:

(1) The subject matter of the action was so plainly beyond the [adjudicative agency's] jurisdiction that its entertaining the action was a manifest abuse of authority; or

(2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or

(3) The judgment was rendered by [an adjudicative agency] lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the [adjudicative agency's] subject matter jurisdiction.

*Id.* at 345–46 (quoting Restatement (Second) of Judgments § 12 (1982)). We analyze these exceptions in turn to determine if any are applicable to Calhoun's bonding claim.

■ First, we inquire whether determination of Calhoun's loss of bonding claim is "plainly beyond" DOT & PF's jurisdiction to adjudicate. We conclude that it is not. DOT & PF's jurisdiction to adjudicate the claim arises from the language of the Coldfoot Hangar contract. Specification 00706, the claims and disputes specification, states that "all claims by the Contractor for additional compensation ... or any dispute regarding a question of fact ... shall be presented in writing by the Contractor." Calhoun's bonding claim was based on his allegations that DOT & PF's actions in administering the contract affected his bonding and ability to conduct business. As such, the allegations constituted a claim for "additional compensation" and "a dispute regarding a question of fact," and

thus fell within the jurisdiction provided by the contract.

Second, we inquire whether allowing an adjudication by the contracting officer to stand would infringe on the authority of another tribunal or agency. We are persuaded that it would not. DOT & PF is the only agency given authority to adjudicate claims under government construction contracts. Thus its authority could not conflict with that of another agency.

Finally, we inquire whether DOT & PF lacked the capability to adequately determine its own jurisdiction. We note initially that DOT & PF has a professional staff, including a contracting officer familiar with the claims process and a claims engineer. Additionally, the Attorney General serves as legal counsel to DOT & PF. The Restatement (Second) of Judgments states that the proper question to ask is "whether the [agency] involved is one in which a challenge to subject matter jurisdiction could be given substantially the same quality of consideration that is available in a trial court of general jurisdiction." Restatement (Second) of Judgments § 12 cmt. e (1982), *quoted in Colville,* 831 P.2d at 350. Given the legal expertise available, we conclude that DOT & PF clearly was capable of determining its own jurisdiction.

Since none of the exceptions to administrative res judicata apply to Calhoun's bonding claim, we hold that his 1991 claim was barred by administrative res judicata.

**IV. CONCLUSION**

We **AFFIRM** the superior court's grant of summary judgment and determination that Calhoun's claims were barred under the doctrine of res judicata.